J-S30011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.C., A MINOR | : | No. 2502 EDA 2015 |

Appeal from the Dispositional Order July 14, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-JV-0000329-2015

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JUNE 15, 2016**

Appellant, K.C., a minor, appeals from the dispositional order entered in the Bucks County Court of Common Pleas, following his adjudication of delinquency for disorderly conduct and criminal attempt—conspiracy.[1]  We affirm.

In its opinion, the juvenile court fully and correctly sets forth the relevant facts and procedural history of this case.[2]  Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

> WAS THE EVIDENCE INSUFFICIENT TO ADJUDICATE
> [APPELLANT], A MINOR, OF CRIMINAL CONSPIRACY TO
> COMMIT ROBBERY IF THE COMMONWEALTH FAILED TO
> PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT
> AGREED WITH ANOTHER PERSON THAT THEY WOULD

---

[1] 18 Pa.C.S.A. §§ 5503(a)(1) and 901(a).

[2] As the juvenile court opinion states, one of Appellant's victims also has the initials K.C.

ENGAGE IN CONDUCT WHICH CONSTITUTES A ROBBERY, OR AGREED TO AID SUCH PERSON IN THE PLANNING OR COMMISSION OF A ROBBERY?[3]

(Appellant's Brief at 6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Rea B. Boylan, we conclude Appellant's issue merits no relief. The juvenile court's opinion comprehensively discusses and properly disposes of the question presented. (**See** Juvenile Court's Opinion, filed September 22, 2015, at 6-7) (finding: Commonwealth's witnesses credibly testified that Appellant proposed to codefendant that they "run up on people" and codefendant agreed, Appellant and codefendant told victims to give Appellant and codefendant what was in victims' pockets, codefendant used his left hand to grab victim's (K.C.) left wrist, Appellant put his hand inside victim's (W.R.) pockets and took pair of glasses, Appellant grabbed K.C.'s collar and necklace, Appellant shook K.C. "hard" and broke necklace, and Appellant continued to ask K.C. what was in his pockets; Appellant and codefendant conspired to take or remove property from victims physically by force; Appellant and codefendant's agreement to "run up on people" and their

_____

[3] Appellant's claim that the Commonwealth's witnesses' testimony was inconsistent and incredible challenges the weight of the evidence rather than the sufficiency. "[A] challenge to the weight of the evidence must be raised with the trial judge or it will be waived." **Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004) (internal quotation marks omitted). Here, Appellant failed to raise a claim challenging the weight of the evidence before the juvenile court. Thus, this claim is waived.

repeated statements that they wanted what was in victims' pockets reveal their shared intent to take victims' property; Appellant and codefendant committed overt acts in furtherance of conspiracy by making demands of victims, searching W.R.'s pockets and removing pair of glasses, and grabbing K.C.'s collar and necklace; evidence established beyond reasonable doubt that Appellant agreed to commit robbery and committed overt acts to further agreement with codefendant).  The record supports the court's decision; therefore, we have no reason to disturb it.  Accordingly, we affirm on the basis of the juvenile court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2016

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**JUVENILE DIVISION**

COMMONWEALTH OF PENNSYLVANIA    :    **No. CP-09-JV-0000329-2015**

           **v.**                      :

**K.C. A Minor**                        :

<u>**O P I N I O N**</u>

Following an adversary hearing on June 16, 2015, this Court found that the appellant (Hereinafter identified as the appellant rather than K.C. because one of the victims also has the initials K.C.) committed the crimes of disorderly conduct and conspiracy to commit robbery. The appellant was adjudicated delinquent on these charges on July 14, 2015 and placed on probation. On appeal, the appellant only challenges the sufficiency of the evidence to adjudicate the appellant delinquent on the charge of conspiring to commit a robbery with A.G. (hereinafter referred to as Co-defendant) The Court files this opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## I.    FACTS

On the evening of June 6, 2015, K.C. and his cousin, W.R., were on their way home from a birthday party to which K.C. had been invited. N.T. 6/16/15, pp. 5-6. K.C. and W.R. are the victims of the robbery.

     A. The following is a summary of the testimony of the three witnesses who testified for the Commonwealth.

         1. <u>Testimony of K.C.</u>

At approximately 9 p.m., when K.C. and W.R. reached a street corner near K.C.'s home, the Co-defendant yelled to them and they stopped. N.T. 6/16/15, p. 5-6. After the Co-defendant

1

told K.C. and W.R. that he wanted what was in their pockets, he used his left hand to grab K.C.'s left wrist, and used his right hand to put his phone behind K.C.'s head. N.T. 6/16/15, p. 7. K.C. did not see the appellant until a few seconds later when the appellant walked up to him. N.T. 6/16/15, p. 8.

The appellant told K.C. and W.R. that he wanted what was in their pockets. N.T. 6/16/15, p. 8. K.C. testified that he saw the appellant take out an air soft gun from his waist area. N.T. 6/16/15, p. 9. The appellant began flipping the gun around, and he asked W.R. what he had in his pockets. N.T. 6/16/15, p. 9. When the appellant put his hands inside W.R.'s pockets, he only found and took a pair of eyeglasses. N.T. 6/16/15, p. 10. While this was happening, the Co-defendant released K.C. and grabbed the eyeglasses and returned them back to W.R. N.T. 6/16/15, p. 11.

After that, the appellant walked towards K.C. and asked what K.C. had in his pockets. N.T. 6/16/15, p. 12. The appellant grabbed the collar of K.C.'s shirt and grasped his necklace. N.T. 6/16/15, p. 12. Shaking K.C. "hard," the appellant kept asking what K.C. had in his pockets. N.T. 6/16/15, p. 14. As a result of this contact, K.C.'s necklace broke and the pendant fell on the ground. N.T. 6/16/15, p. 12. K.C. pushed the appellant and picked up the pendant. N.T. 6/16/15, p. 13.

### 2. Testimony of W.R.

W.R. testified that when he and K.C. reached a street corner around 7:10 p.m., he saw the appellant. N.T. 6/16/15, p. 23. The appellant was with the co-defendant and several other people. N.T. 6/16/15, p. 24. The appellant was holding a gun, but W.R. was not sure whether the gun was real. N.T. 6/16/15, p. 24. W.R. heard someone saying that they were going to "mug" K.C. and W.R.; however, W.R. did not know who said it. N.T. 6/16/15, p. 24.

2

W.R. testified that the group of people "ran up to" K.C. and W.R. and "grabbed" K.C. N.T. 6/16/15, p. 24. Then the appellant "checked [W.R.'s] pockets" and found a pair of eyeglasses. N.T. 6/16/15, p. 25. The Co-defendant told the appellant to give the eyeglasses back to W.R., and the appellant did so. N.T. 6/16/15, p. 25.

After W.R. got his glasses back, he saw that the group of people were still holding K.C., but he was not sure who specifically was holding K.C. N.T. 6/16/15, p. 26. W.R. saw them grab K.C.'s necklace, pull it, and break it. N.T. 6/16/15, p. 26. Then, the group of people stopped, and K.C. and W.R. "speed walked" home. N.T. 6/16/15, p. 26.

### 3. Testimony of Co-Defendant

The Co-defendant also testified that when he and the appellant were walking on the street, the appellant proposed to "run up on people soon," and the Co-defendant agreed to do so. N.T. 6/16/15, 31. The appellant and the Co-defendant ran to K.C. and W.R. N.T. 6/16/15, p. 31. The Co-defendant told K.C. to place his hands behind his back, and the appellant threatened K.C. by putting the cellphone to the back of K.C.'s head. N.T. 6/16/15, p. 32. According to the Co-defendant, the appellant took the glasses off W.R. and threw them to the ground. N.T. 6/16/15, p. 32. He said that he picked the glasses up and gave them back to W.R. N.T. 6/16/15, p. 32. The appellant snatched the chain off K.C. and it fell to the ground. N.T. 6/16/15, p. 32. K.C. picked up the chain and the Co-defendant ran. N.T. 6/16/15, p. 32.

B. The following is a summary of the testimony of the three witnesses who testified for the appellant.

1. Telanna Lindsay, the appellant's mother, testified that the appellant did not have a cell-phone on the evening of June 6, 2015 because she had previously taken it from him. N.T. 6/16/15, p. 37.

3

2.  Edwin North, a student aged fourteen, testified that he heard K.C. say on the basketball court that K.C. lied in testifying about the appellant's holding a gun rather than a phone.  N.T. 6/16/15, p. 43.

3.  Officer Jessica Bloomingdale testified that she was told there might have been a BB gun, and that she never heard anything about someone flipping around a gun.  N.T. 6/16/15, p. 45.

## II.   PROCEDURAL HISTORY

On July 24, 2015, the appellant filed a notice of appeal to the Superior Court.  A Statement of Matters Complained of on Appeal was filed on August 13, 2015.

## III.   STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On August 13, 2015, the appellant submitted a Statement of Matters Complained of on Appeal, raising the following issue for review:

1.  The evidence was insufficient to adjudicate the appellant delinquent on the charge of conspiracy to commit robbery because the Commonwealth failed to prove beyond a reasonable doubt that the appellant agreed with another person that they would engage in conduct which constitutes a robbery, or agreed to aid such person in the planning or commission of a robbery.

## IV.   DISCUSSION

The standard of review for a sufficiency of the evidence claim is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

4

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

Commonwealth v. Estepp, 17 A.3d 939, 943 (Pa. Super. Ct. 2011) (citation omitted).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Id. at 943-44.

The appellant was adjudicated delinquent on the charge of conspiracy to commit robbery.

Under 18 Pa. C.S.A. § 3701(a), robbery is defined as follows:

> (a) Offense defined.—
> (1) A person is guilty of robbery if, in the course of committing a theft, he:
> . . .
> (v) physically takes or removes property from the person of another by force however slight; or
>
> . . .
> (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa. Cons. Stat. Ann. § 3701(a). Theft is defined as follows: "A person is guilty of theft if he

unlawfully takes, or exercises unlawful control over, movable property of another with intent to

deprive him thereof." 18 Pa. Cons. Stat. Ann. § 3921(a).

> Under 18 Pa. C.S.A. § 903, conspiracy is defined as follows:
>
> (a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

5

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

. . .

(e) Overt act.--No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa. Cons. Stat. Ann. § 903. A conviction of conspiracy requires the Commonwealth to prove that: (1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; (2) he shared the criminal intent with such other person; and (3) an overt act was committed in furtherance of the conspiracy. Commonwealth v. Devine, 26 A.3d 1139, 1147 (Pa. Super. Ct. 2011) (citation omitted).

"The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." Commonwealth v. Keefer, 487 A.2d 915, 918 (Pa. Super. Ct. 1985). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Commonwealth v. Strantz, 195 A. 75, 80 (Pa. 1937).

> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

Commonwealth v. Greene, 702 A.2d 547, 554 (Pa. Super. Ct. 1997) (citation omitted). "Mere presence at the scene of the crime, however, is not enough." Commonwealth v. Dancy, 650 A.2d 448, 452 (Pa. Super. Ct. 1994). The Commonwealth must prove that the defendant was "an active participant" in the commission of the crime. Id.

Here, the Commonwealth witnesses were credible when they described the following events which happened and this testimony is unrebutted. The appellant proposed to "run up on

6

people soon," and the Co-defendant agreed to do so. N.T. 6/16/15, p. 31. The appellant and the Co-defendant told K.C. and W.R. that they wanted what was in the victims' pockets. N.T. 6/16/15, pp. 7, 8, 9, 12, 13, 14. The Co-defendant used his left hand to grab K.C.'s left wrist. N.T. 6/16/15, p. 7. When the appellant put his hands inside W.R.'s pockets, he only found a pair of glasses and took them. N.T. 6/16/15, pp. 10, 25. The appellant grabbed the collar of K.C.'s shirt and grasped K.C.'s necklace. N.T. 6/16/15, pp. 12, 32. The appellant shook K.C. "hard," and the necklace was broken. N.T. 6/16/15, pp. 14, 32. The appellant continued to ask what K.C. had in his pockets. N.T. 6/16/15, p. 13.

These facts establish that the appellant and Co-defendant conspired to physically take or remove property from another person by force. 18 Pa. C.S.A. § 3701(a)(1)(v). The appellant and Co-defendant's agreement to run up on people and their repeated statements that they wanted what was in the victims' pockets reveal their shared intent to take property from the victims. N.T. 6/16/15, pp. 7, 8, 9, 12, 13, 14, 31. These demands as well as the search of W.R.'s pockets and removal of a pair of glasses by the appellant and the grabbing of K.C.'s collar and grasping of K.C.'s necklace were all overt acts committed by the appellant in furtherance of the conspiracy. N.T. 6/16/15, pp. 10, 12, 25. Thus, the evidence, considered as a whole, establishes beyond a reasonable doubt that the appellant agreed to commit a robbery and committed overt acts to further the agreement. It does not matter whether they actually possessed a gun or found and retained items they wanted.

For the foregoing reasons this Court found that the Commonwealth proved the charge of conspiracy to commit robbery and adjudicated the appellant delinquent on this charge.

7

DATE: *September 22, 2015*        BY THE COURT,

_____

REA B. BOYLAN, J.

8